THIS OPINION IS A
PRECEDENT OF THE T.T.A.B.

Oral Hearing:                           Mailed:
December 18, 2007                        April 16, 2008


**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Right-On Co., Ltd.

_____

Serial Nos. 79014936; 79014939; 79015094[1]

_____

James A. Oliff and William P. Berridge of Oliff & Berridge,
PLC for Right-On Co., Ltd.

Gina M. Fink, Trademark Examining Attorney, Law Office 109
(Dan Vavonese, Managing Attorney).

_____

Before Bucher, Kuhlke and Taylor, Administrative Trademark
Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Right-On Co., Ltd. has filed applications to register

as trademarks on the Principal Register the pocket-

stitching designs shown below for goods identified as

---

[1] The above-noted appeals for application Serial Nos. 79014936
and 79014939 were consolidated by Board order on May 23, 2007,
for purposes of briefing.  In addition, inasmuch as the issues
raised by the two consolidated appeals are similar to the appeal
in application Serial No. 79015094, the Board is addressing them
in a single opinion.  Citations to the briefs refer to the briefs
filed in application Serial No. 79014936, unless otherwise noted;
however, we have, of course, considered all arguments and
evidence filed in each case.

"clothing, namely, jeans, t-shirts, polo shirts, sweat shirts, sweaters, gloves and socks; belts for clothing; footwear, namely, sports shoes, mountaineering boots and sandals; headgear for wear, namely, caps and hats" in International Class 25.



The first two designs, which are the subjects of application Serial Nos. 79014936 and 79014939, include the following description:

> The mark consists of a stitching design on side-
> by-side pockets.  The solid lines represent
> stitching.  The shape of the pockets is not
> claimed as part of the mark.  The dotted lines

> are not claimed as a feature of the mark, but
> rather show the mark's position on the goods.

The third design, which is the subject of application Serial No. 79015094, includes the following description and color claim:

> The mark consists of a stitching design on side-by-side pockets.  The shape of the pockets is not claimed as part of the mark.  The pockets are blue; the stitching is gold.  The color(s) blue and gold is/are claimed as a feature of the mark.

All three applications were filed on July 8, 2005, based on a request for extension of protection under Section 66(a) of the Trademark Act, 15 U.S.C. §1141f(a).

The examining attorney refused registration of applicant's marks under the provisions of Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052 and 1127, on the ground that the pocket-stitching designs are "decorative or [] ornamental feature[s] of the goods that are not inherently distinctive and thus would not be perceived as [] mark[s] by the purchasing public without further evidence of acquired distinctiveness."  Br. p. 1. In addition, although the examining attorney noted that the pocket-stitching designs were "capable of acquiring distinctiveness," the examining attorney indicated that

applicant "elected not to attempt a claim of acquired distinctiveness under Section 2(f)."[2]

When the refusals were made final, applicant appealed and concurrently requested reconsideration. Upon denial of the requests for reconsideration, the Board resumed these proceedings. The appeals have been fully briefed and an oral hearing was held on December 18, 2007.

Summary of Examining Attorney's Arguments and Evidence

In maintaining the refusals that the pocket-stitching designs fail to function as marks, the examining attorney contends that "applicant's stitching designs do not incorporate any elements that look any different than any other decorative stitching patterns, and thus would not be viewed as inherently distinctive. The practices of the trade lead to the conclusion that the applicant's mark is ornamental as evaluated under Sections 1, 2 and 45, but capable of acquiring distinctiveness. Mere stitching on jeans pockets is not inherently viewed as a trademark." Br. pp. 3-4. As to the color element in application Serial No. 79015094, she argues that "applicant's 'gold' stitching on a blue background on side-by-side pockets is hardly

---

[2] Amendment to the Supplemental Register is not available for applications filed under Section 66(a) of the Trademark Act. Extension of protection shall be refused to any mark not registrable on the Principal Register. Trademark Act §68(a)(4), 15 U.S.C. §1141h(a)(4).

unique.  The 'blue background' of the applicant's potentially/likely blue jeans pockets couldn't be more 'common.'  The use of gold stitching is also a well-used thread color.  Additionally, the use of thread of a different color than the 'background' color would easily be viewed as ornamental or decorative and not be seen as unique without further evidence of acquired distinctiveness."  Br. p. 8 (Serial No. 79015094).

In support of her refusals, the examining attorney submitted several third-party registrations for pocket-stitching designs that have been registered on the Supplemental Register or on the Principal Register based on a showing of acquired distinctiveness under Section 2(f) of the Trademark Act.  See, e.g., Reg. Nos. 2626917, 3135750 and 3064567 (owned by Abercrombie & Fitch Trading Co.); Reg. Nos. 1695617 and 3161010 (owned by Guess?, Inc.); and Reg. Nos. 2835542 and 2857029 (owned by Giorgio Armani S.P.A.).  In addition, the examining attorney submitted printouts of several web pages retrieved from the Internet and newspaper articles retrieved from the Nexis database that "discuss stitching on jeans pockets as a way of decorating pockets or clothing" which "lead to the conclusion" that the practices of the trade view stitching on pockets as ornamental, but capable of acquiring

5

distinctiveness. Br. p. 7. See, e.g., patternreview.com ("Decorative stitching on jeans pockets"); Ohio State University Extension Fact Sheet, ohioline.osu.edu ("Fashion detailing is evident in pockets, especially hip pockets. Pocket shape, top-stitching pattern and other trim ideas are varied to create interesting and distinctive garment detail; however, some companies promote plain pocket jeans. Four- and five-pocket styling dominate the jeans market."); and The Capital Times (Madison, Wisconsin October 11, 2005) ("And the ones that aren't on sale are those imitating the premium labels – with an emphasis on more ornamental back pockets, contrast stitching, softer material, Lycra for a snug fit, and more importantly, a heftier price tag.").

### Summary of Applicant's Arguments and Evidence

Applicant contends that "[i]t is common practice in the trade to use stylized stitching on hip pockets to distinguish manufacturers, and applicant's arbitrary mark[s] serve[] this source-identifying function notwithstanding any ornamental nature." Br. p. 3. Applicant argues that as a result "[c]onsumers have been conditioned to recognize pocket stitching as source identifiers." Br. p. 7. Applicant continues stating that it "uses its design on side-by-side pockets, where the pockets are easily seen whether folded on display in a

store, or worn by a consumer." Applicant concludes that "designs in such locations are known to be source identifiers just as designs or marks located in the breast area of a shirt are known to be source identifiers, as conceded by the Examining Attorney." Br. p. 11.

Applicant asserts that the web pages and newspaper articles submitted by the examining attorney support its position, noting for example that one article "states that department stores and mall-type chains like Gap carry moderately expensive denim from manufacturers that are 'imitating the premium labels-with an emphasis on more ornamental back pockets, contrast stitching, softer material, lycra for a snug fit, and most importantly, a heftier price tag.'" Applicant concludes that this article shows that "stitching designs on jean pockets are so recognized as a source indicator that moderately famous labels are attempting to capitalize on the goodwill of premium labels by using similar stitching designs." Br p. 10.

In countering the examining attorney's position that consumers recognize certain pocket stitching because it has acquired distinctiveness associated with a particular designer, applicant states that "the fact that one stitching design is more famous than another stitching

design used in the same location in the same way does not make the less famous design merely ornamental.  Rather as indicated by the Examining Attorney's stipulation, consumers will look to such designs as a source indicator, regardless of whether the source is famous."[3]  Br. pp. 4-5.

Finally, applicant argues that its stitching design is unique in comparison to other marks in the relevant industry in that its proposed marks, consisting of "distinctive pocket stitching, which include[] smoothly curved lines of varying thickness and abrupt points, [are] easily recognized mark[s]."  Br. p. 3.

In support of its position, applicant provided several third-party registrations for pocket stitching designs registered on the Principal Register without a showing of acquired distinctiveness.  Applicant particularly relies on registrations owned by Levi Strauss & Co. (Levi's) and the various infringement actions brought by Levi's against other third parties because of their use of pocket stitching designs referred to in a newspaper article submitted by the examining attorney.[4]

---

[3] For clarification, we note that the examining attorney did not "stipulate" that pocket stitching can be inherently distinctive, but rather that it may be capable of acquiring distinctiveness.

[4] We note that the oldest Levi's registration in the record

In addition, applicant submitted three of its registrations for pocket-stitching designs which issued on the Principal Register without a showing of acquired distinctiveness.

## Discussion

*Failure to Function Under Sections 1, 2 and 45*

In determining whether a design is inherently distinctive, we must consider "whether it [is] a 'common' basic shape or design, whether it [is] unique or unusual in a particular field, [or] whether it [is] a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods."  Seabrook Foods, Inc. v. Bar-Well Foods Ltd., 568 F.2d 1342, 196 USPQ 289, 291 (CCPA 1977).  See also Tone Brothers Inc. v. Sysco Corp., 28 F.3d 1192, 31 USPQ2d 1321, 1331 (Fed. Cir. 1994); and In re Glaxo Group Ltd., 53 USPQ2d 1920, 1922 (TTAB 2000) ("In cases involving the alleged inherent distinctiveness of trade dress, the Board has in the past looked to Seabrook.").

---

issued in 1943 prior to the statutory provisions allowing for registration based on acquired distinctiveness under Section 2(f).

Moreover, an inherently distinctive mark is one which is "by its very nature distinctive or unique enough to create a commercial impression as an indication of origin...." In re Raytheon Co., 202 USPQ 317 (TTAB 1979). While the design may in fact be unique, i.e., it is the only such design being used, it also must possess an "original, distinctive and peculiar appearance." In re McIlhenny Co., 278 F.2d 953, 126 USPQ 138, 140 (CCPA 1960).

We begin by noting that, while the refusals are directed to all of the goods,[5] the examining attorney and applicant have restricted their arguments to applicant's jeans listed in the identification of goods in each application. Therefore, we make our determination based on applicant's jeans and note that we need not address the other goods. Cf. In re Analog Devices, Inc., 6 USPQ2d 1808 (TTAB 1988) (it is well settled that where a mark may be merely descriptive of one or more items of goods in an application but may be suggestive or even arbitrary as applied to other items, registration is properly refused if the subject matter for registration is descriptive of any of the goods for which registration is sought).

---

[5] Notice of Provisional Refusal (January 31, 2006); TMEP §1904.03(b) (5th ed. 2007).

It is clear from the record that the application of stitching designs to pockets is a common practice in the relevant trade, i.e., the jeans market.  The crux of the dispute here is the legal meaning to be attributed to this practice.  The examining attorney maintains that under the case law this "common practice" supports an ornamentation refusal, whereas applicant maintains that this set of facts supports a finding that such stitching is recognized as a trademark.

Inasmuch as pocket stitching is a "commonly-adopted and well known form of ornamentation" for jeans, a "mere refinement" cannot be inherently distinctive.  However, such stitching is capable of acquiring distinctiveness and the record shows the extent to which some purveyors of jeans tout their stitching and assert it as a source identifier.

We do not find the evidence of record persuasive of a different result.  While applicant is correct in noting, for example, that the screenshots from wikipedia.com show the "great diversity of pocket stitching designs currently being used in the marketplace," it is not clear that these designs are acting as source identifiers rather than ornamentation or that, if they are source identifiers, that they came to be such through acquired distinctiveness.

11

Considering applicant's pocket-stitching designs within these legal parameters, we find that they are not "unique or unusual" but rather are in the category of a "common basic shape or design" and are at most "a mere refinement of a commonly-adopted and well-known form of ornamentation" for jeans. Moreover, the pocket-stitching designs on the side-by-side pockets are mirror images, which serve to create the appearance of a single decorative design. In the case of jeans, where the placement spans the back of the jeans, the mirror image enhances the ornamental effect.

Applicant's argument that its designs are not common is not supported by the record. There are a multitude of variations of arches, checks, swoops, waves and other linear designs registered or in use on jeans pockets. They are in no way "elaborate and unique." With regard to the additional elements of color in application Serial No. 79015094, we find that rather than providing a unique design, the blue and gold combination simply adds to the ornamentation in a non-unique manner.

Further, we must consider the size, location and dominance of the designs in determining the commercial impression of designs. In re Dimitri's Inc., 9 USPQ2d 1666, 1667 (TTAB 1988). As stated in the Trademark Manual

12

for Examining Procedure, "[a] small, neat and discrete word or design feature (e.g., small design of animal over pocket or breast portion of shirt) may be likely to create the commercial impression of a trademark, whereas the larger rendition of the same matter emblazoned across the front of a garment (or tote bag, or the like) may be likely to be perceived merely as a decorative or ornamental feature of the goods. However, a small, neat, and discrete word or design feature will not necessarily be perceived as a mark in all cases." TMEP §1202.03(a). First, there is no per se rule that a "neat and discrete" design is inherently distinctive. Moreover, we do not find applicant's designs which span two pockets in a mirror image to be "neat and discrete," but rather more in the category of matter that is "emblazoned" across the garment.

In view thereof, purchasers and prospective customers for applicant's goods would be unlikely to regard any of these designs as identifying and distinguishing applicant's jeans and indicating their source, without a showing that the designs had acquired distinctiveness.

As to the third-party registrations, each case must be decided on its own set of facts and the existence of registrations for other designs does not entitle applicant to registration of the designs sought to be registered

13

here.  See In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564 (Fed. Cir. 2001); and In re Inter State Oil Co., Inc., 219 USPQ 1229 (TTAB 1983).  In any event, the record includes fourteen registrations issued on the Principal Register and seventeen issued on the Supplemental Register or registered under Section 2(f).  Such a record provides little insight other than to indicate that pocket-stitching designs have sometimes been found to be inherently distinctive and sometimes found not to be inherently distinctive.

With regard to applicant's registrations issued under Section 66(a), we note that in the case of intent-to-use applications filed under Section 1(b) of the Trademark Act, 15 U.S.C. §1051(b), examining attorneys are instructed to wait until a specimen of use has been filed, either with an amendment to allege use or statement of use, before issuing an ornamentation refusal in order to better understand the nature of the mark and how it will appear on the goods or packaging.  See TMEP §1202.03(e).  Applications filed under Section 66(a) are also filed and initially examined without a specimen of use.  However, unlike applications filed under Section 1(b), applications based on Section 66(a) of the Trademark Act do not require the submission of a specimen of use prior to registration.  Thus, applicant's

14

registrations may have issued with the examining attorney not being aware of the way the mark would be used or perceived.

Section 68(a)(4) of the Trademark Act provides that "[e]xtension of protection shall be refused to any mark not registrable on the Principal Register," and the Trademark Manual of Examining Procedure instructs that "[u]nder Section 68(a) of the Trademark Act, a request for extension of protection will be examined under the same standards as any other application for registration on the Principal Register." TMEP §1904.02(a). Therefore, in order to properly examine applications under Section 66(a), it is appropriate for examining attorneys to issue an ornamentation refusal if the mark is decorative or ornamental on its face as depicted on the drawing page and described in the description of the mark.[6]

**Decision:** The refusals to register the stitching design marks in each application on the grounds that they constitute mere ornamentation and fail to function as marks are affirmed.

---

[6] We further note that examining attorneys may request information as to the intended use of the mark to better understand how a proposed mark may be perceived. Trademark Rule 2.61(b), 37 C.F.R. §2.61(b).